# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, | |
| Plaintiff, | Civil Action No.: 6:20-cv-00813-ADA |
| v. | **JURY TRIAL DEMANDED** |
| JUNIPER NETWORKS, INC. | |
| Defendant. | |

## DEFENDANT JUNIPER NETWORKS, INC.'S FIRST AMENDED ANSWER

## AND COUNTERCLAIMS

## <u>ANSWER</u>

## <u>NATURE OF THE ACTION</u>

1.      Juniper admits that Brazos purports to bring a civil action for patent infringement arising under the patent laws of the United States.

## <u>THE PARTIES</u>

2.      Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2, and therefore denies them.

3.      Juniper admits that it is a Delaware corporation.  Juniper further admits that it has a small sales office located at 1120 South Capital of Texas Highway, Suite 120, First Floor, Building 2, Austin, Texas 78746, within the Western District of Texas.  Juniper further admits that it may be served through its designated agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.  Juniper further admits that it is registered to do business in the State of Texas and has been since at least April 27, 2017.  Juniper denies any remaining allegations in paragraph 3.

## JURISDICTION AND VENUE

4.      Juniper admits that Brazos purports to bring a claim for patent infringement arising under the patent laws of the United States and that this Court has subject matter jurisdiction over patent law claims.

5.      Juniper denies that this Court has general personal jurisdiction over it, but admits—for purposes of this action only—that this Court has specific personal jurisdiction over it.  Juniper denies that it has committed acts of infringement within the Western District of Texas, or any other District, and further denies any remaining allegations in paragraph 5.

6.      Juniper admits that it is registered to do business in the State of Texas, has offices in the State of Texas, and has transacted business in the Western District of Texas.  Juniper further admits that it has a small sales office located at 1120 South Capital of Texas Highway, Suite 120, First Floor, Building 2, Austin, Texas 78746, within the Western District of Texas.  Juniper denies any remaining allegations in paragraph 6.

7.      Juniper denies that venue is proper and denies that it has committed any acts of infringement in the Western District of Texas.  Juniper further submits that this venue is not convenient and that the interests of justice and the convenience of the parties warrant transfer under 28 U.S.C. § 1404(a) to the Northern District of California.  Juniper denies any remaining allegations in paragraph 7.

8.      Juniper admits that it is registered to do business in the State of Texas, has offices in the State of Texas, and has transacted business in the Western District of Texas.  Juniper further admits that it has a small sales office located at 1120 South Capital of Texas Highway, Suite 120,

First Floor, Building 2, Austin, Texas 78746, within the Western District of Texas.  Juniper denies any remaining allegations in paragraph 8.

9.      Juniper admits that it maintains a small sales office at 5830 Granite Pkwy #850, Plano, Texas 75024.  Juniper denies any remaining allegations in paragraph 9.

10.     Juniper admits the allegations of paragraph 10.

11.     Juniper admits that it markets, sells, and offers to sell its products to customers and end users located in this District.  Juniper denies that it has committed acts of infringement within the Western District of Texas, or any other District, and further denies any remaining allegations in paragraph 11.

12.     Juniper admits the allegations of paragraph 12.

### COUNT 1 (ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,483,998)

13.     Paragraph 13 contains no allegations that require a response.

14.     Juniper denies that the '998 Patent was duly and legally issued.  As to the remainder of the allegations of paragraph 14, Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and therefore denies them.

15.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 15 and therefore denies them.

16.     Juniper admits that it makes and sells products including QFX Series Switches, including model numbers QFX3500, QFX3600, QFX5100, and QFX5110, and EX Series Switches, including model number EX4300 (the "Accused Products").  As to the remainder of the allegations of paragraph 16, Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations and therefore denies them.

17.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 17 and therefore denies them.

18.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 18 and therefore denies them.

19.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 19 and therefore denies them.

20.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 20 and therefore denies them.

21.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 21 and therefore denies them.

22.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 22 and therefore denies them.

23.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 23 and therefore denies them.

24.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 24 and therefore denies them.

25.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 25 and therefore denies them.

26.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 26 and therefore denies them.

27.     Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 27 and therefore denies them.

28.    Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 28 and therefore denies them.

29.    Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 29 and therefore denies them.

30.    Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 30 and therefore denies them.

31.    Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 31 and therefore denies them.

32.    Juniper denies the allegations of paragraph 32 and specifically denies that it has committed any acts of infringement.

33.    Juniper denies the allegations of paragraph 33 and specifically denies that it has committed any acts of infringement.

34.    Juniper lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 34 and therefore denies them.

35.    Juniper denies the allegations of paragraph 35 and specifically denies that it has induced any acts of infringement.

36.    Juniper denies the allegations of paragraph 36 and specifically denies that it has induced any acts of infringement.

37.    Juniper denies the allegations of paragraph 37 and specifically denies that it has contributed to any acts of infringement.

38.    Juniper denies the allegations of paragraph 38 and specifically denies that it has contributed to any acts of infringement.

39.     Juniper denies the allegations of paragraph 39 and specifically denies that it has contributed to any acts of infringement.

40.     Juniper denies the allegations of paragraph 40, specifically denies that it has committed any acts of infringement, and further specifically denies that Brazos has suffered any damages.

## JURY DEMAND

Juniper admits that Brazos sets forth a demand for a trial by jury.  Juniper likewise demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

The paragraphs under the "Prayer for Relief" heading set forth the statement of relief requested by Brazos, to which no response is required.  Juniper denies that it has committed any acts of infringement, further denies that Brazos is entitled to any of the requested relief, and denies any allegations in these paragraphs.

## AFFIRMATIVE DEFENSES

Subject to the responses above, Juniper alleges and asserts the following defenses in response to the allegations, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  In addition to the affirmative defenses described below, subject to its responses above, Juniper specifically reserves all rights to allege additional affirmative defenses, at law or in equity, that may exist now or may be available in the future based on discovery and further investigation in this action.

## FIRST DEFENSE: NON-INFRINGEMENT

1.      Juniper does not infringe and has not infringed, either literally or under the doctrine of equivalents, and is not liable for infringement of, any valid and enforceable claim of the '998 Patent, including under the reverse doctrine of equivalents.

## SECOND DEFENSE: INVALIDITY

2.      The claims of the '998 Patent are invalid and unenforceable for failure to comply with the conditions for patentability under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD DEFENSE: PROSECUTION HISTORY ESTOPPEL

3.      By reason of statements, representations, concessions, admissions, arguments, and/or amendments, whether explicit or implicit, made by or on behalf of the applicant during the prosecution of the patent applications that led to the issuance of the '998 Patent, Brazos's claims of patent infringement are barred, in whole or in part, by the doctrine of prosecution history estoppel.

## FOURTH DEFENSE: EQUITABLE DEFENSES

4.      On information and belief, all or some of Brazos's claims for relief are barred, in whole or in part, by the doctrines of waiver, implied waiver, acquiescence, equitable estoppel, promissory estoppel, patent misuse, unfair competition, unclean hands, and/or other equitable remedies.

## FIFTH DEFENSE: DAMAGES LIMITATIONS

5.      On information and belief, Brazos's claims for relief are limited or barred, in whole or in part, by 35 U.S.C. §§ 286, 287 and/or 288.  To the extent that Brazos, its predecessors, or any

of their licensees of the '998 Patent failed to properly mark any relevant products or materials as required by 35 U.S.C. § 287, Brazos's damages are barred, in whole or in part.

## SIXTH DEFENSE: LICENSE

6.      To the extent the '998 Patent has been licensed to Juniper customers or suppliers or other third-parties, Brazos's claims are barred, in whole or in part, by express license, release, and/or under the doctrines of implied license, patent exhaustion, and/or the single recovery rule.

## SEVENTH DEFENSE: GOVERNMENT SALES

7.      Brazos's claims for relief and prayer for damages are limited by 28 U.S.C. § 1498.

## EIGHTH DEFENSE: INEQUITABLE CONDUCT

8.      The '998 Patent is directed to a "cluster router architecture and methods for performing distributed routing" in which the cluster router is made of "off-the shelf Personal Computer (PC) hardware-based router cluster nodes" that are "interconnected in an intra-connection network." Dkt. 1-01 at Abstract. The '998 Specification concedes that it was known in the prior art to interconnect routers to work together in a cluster to address the scalability issues of dedicated hardware-based routers. *Id.* at 4:45-6:13.

9.      As explained in detail below, the '998 Patent is unenforceable as a result of inequitable conduct. During the prosecution of the '998 Patent, the patent applicant argued that the claims were allowable over the prior art because they recited the use of "external links" for scalability. This was the *only* limitation that the patent applicant identified to distinguish independent claim 17 (currently asserted) from the prior art cited by the patent examiner. However, the patent applicant, prosecuting counsel, and/or others involved with the prosecution of the '998 patent knew of at least one prior art reference—U.S. Patent No. 6,101,181 ("Passint," attached hereto as Exhibit C)—that expressly disclosed the use of "external links" for scalability.

*See* '998 Prosecution History (attached hereto as Exhibit A).  Passint issued on August 8, 2000 and is prior art to the '998 Patent under 35 U.S.C. §102(b).  Moreover, the patent applicant, prosecuting counsel, and/or others knew Passint to be highly material to the patentability of the '998 claims, yet intentionally withheld the reference from the U.S. Patent and Trademark Office ("Patent Office").  This allowed the individuals pursuing the prosecution of the '998 Patent to present the misleading and deceptive argument that usage of "external links" for scalability made the '998 Patent claims patentable.

**The '998 Patent And The Closely Related '775 Patent**

10.     U.S. Patent No. 7,436,775 ("'775 Patent," attached hereto as Exhibit D) is closely related to the '998 patent and was filed with claims that were *nearly identical* to the claims of the '998 patent.  *See* Prosecution History for the '775 Patent (attached hereto as Exhibit B).  For example, original claim 12 of the '775 Patent and issued claim 17 of the '998 Patent (currently asserted) are nearly identical as shown below:

| '775 Patent | '998 Patent |
|---|---|
| 12. A router cluster node of a plurality of router cluster nodes interconnected in a cluster router, the router cluster node comprising: | 17. A router cluster node of a plurality of router cluster nodes interconnected in a cluster router, each router cluster node comprising: |
| a. a plurality of cluster router internal interconnecting links connected thereto, the internal interconnecting links enabling the exchange of packets with adjacent router cluster nodes in the cluster router; | a. a plurality of cluster router internal interconnecting links connected thereto, the internal interconnecting links enabling the exchange of packets with adjacent cluster nodes in the cluster router; |
| b. at least one cluster router external link connected thereto, the at least one external link enabling exchange of packets between external communications network nodes and the cluster router; and | b. at least one cluster router external link connected to each of the cluster router nodes interconnected in the cluster router, the at least one external link enabling exchange of packets between communications network nodes external to said cluster router and the cluster router; |
| c. a router-cluster-node-centric configuration to effect distributed routing of the conveyed packets, | c. a router-cluster-node-centric configuration to effect distributed routing of the conveyed packets, and wherein the inclusion of said at least one |

| the equivalency between router cluster nodes in the cluster router providing <u>a scalable router.</u> | external link in each of the router cluster nodes in the cluster router provides <u>a scalable router.</u> |
|---|---|

11.     The '775 Patent application was filed on July 24, 2003 (four months before the '998 Patent application was filed).  The '775 Patent names two inventors: John Lawrence Jordan and Peter Rabinovitch.  Peter Rabinovitch is the sole named inventor of the '998 Patent.  On behalf of the patent owner, both applications were signed by in-house counsel John Granchelli.  The '775 and '998 Patent applications were both prosecuted by the same counsel, Mr. Jim Zegeer and Bacon & Thomas, PLLC, but were assigned to different patent examiners.  Mark A Mais was the examiner for the '775 Patent, and Melvin Pollack was the examiner for the '998 Patent.  *See* Ex. A at 74; Ex. B at 74.  As attorneys prosecuting both applications, both Mr. Zegeer and Mr. Granchelli knew that the '775 Patent and '998 Patent were closely related and included nearly identical claims.  Prosecution counsel also knew that both patent applications were assigned to and being examined by different examiners at the Patent Office.  *See generally* Ex. A, Ex. B.  The two patents do not state they are related to one another, nor were any '775 Patent prosecution events disclosed to the Patent Office during the '998 prosecution.

**<u>The Examiner's Rejections Of The '775 Patent's Claims In View Of The Passint Reference</u>**

12.     During the prosecution of the '775 Patent, the examiner rejected numerous claims based on Passint, including claim 12 listed above, which is nearly identical to issued claim 17 of the '998 Patent.  *See* Ex. B at 77-82.

13.     On May 9, 2007, the examiner rejected claims 1-23 of the '775 Patent application under 35 U.S.C. §102(b) as being anticipated by Passint.  *Id*. at 76.  In doing so, the examiner found that the "external link" claim limitation was disclosed by Passint.  Specifically, the examiner found that "Passint et al. discloses . . .(b) at least one cluster router external link connected thereto, the at least one external link enabling exchange of packets between external communications

network nodes and the cluster router [each router has numerous input/output ports for receiving/sending messages, col. 3, lines 50-54]." *See* Ex. B at 77-78.

14.     Passint generally describes "a method and a multiprocessor computer system including a plurality of processing element nodes." Ex. C. at 3:45-47 (Passint).  Passint explains that the "nodes are interconnected by a scalable interconnect network 28, which permits multiprocessor computer systems 20 to be scale from desk side systems to very large supercomputer configurations." *Id.* at 5:54-58.  Within the interconnect network, "[r]outers route messages between the plurality of processing element nodes on the physical communication links." *Id.* at Abstract.  In Passint, "[e]ach router includes input ports for receiving messages, output ports [i.e., "external links" (annotated in red in the figure below)] for sending messages from the router, two types of virtual channels, a lookup table associated with the input port having a lookup table virtual channel number, and a virtual channel assignment mechanism." *Id.* at 3:52-57.  Passint describes an example of these interconnected nodes where each of the nodes includes "two processor ports from each router, such as those labelled PP" which "couple each router to two nodes to create a double bristled topology [i.e., scalability]." *Id.* at 7:36-49.



FIG. 4

15.     In response to the examiner's May 9, 2007 rejection of the '775 claims based on Passint, the applicants cancelled pending claims 1-23 and amended the application to add claims with substantially narrower limitations.  *See* Ex. B at 63-67.  Despite these newly added narrower claims, the examiner again rejected the '775 claims as being anticipated by Passint.  *Id.* at 41 (November 29, 2008 Final Rejection).  Once again, the examiner expressly found that Passint discloses "external links," stating:  "Passint et al. discloses. . . a plurality of external links for enabling said cluster-based router to exchange traffic with a plurality of nodes of said packet-switched communication network [each router has numerous input/output ports for receiving/sending messages, col. 3, lines 50-54]."  *Id.* at 41-42.

16.     In response to this Final Rejection of the '775 claims based on Passint, the applicant's April 29, 2008 arguments included an annotated version of Figure 5 from Passint.  *Id.* at 36.  These annotations, which are highlighted in yellow below, expressly demonstrate that the applicant agreed that Passint shows "external links" and in fact labeled the figure with the term "external connections":



17.     In the same response, the patent applicant amended the '775 independent claims to recite "said configuration having n dimensions, said cluster nodes being interconnected by said internal links in such a way that each of said cluster nodes is connected to two other cluster nodes in each of said dimensions, each of said cluster nodes thereby being connected to 2*n said internal links." *Id*. at 30-33.   In view of these narrowing amendments, the examiner issued a notice of allowance finding that the amended, substantially narrower claims of the '775 Patent were allowable. *Id*. at 13.

18.     Despite the clear overlap in subject matter between the '775 Patent and the '998 Patent and the presentation of nearly identical claims to the Patent Office during prosecution, neither patent applicant, prosecution counsel, nor any other party owing a duty of candor to the Patent Office ever cited Passint or disclosed the '775 Patent prosecution events to the Patent Office.

**Individuals Prosecuting The '998 Application Did Not Disclose Passint Or The Fact That They Amended The Nearly-Identical '775 Claims In View Of Passint**

19.     In 2008, during the prosecution of the '998 Patent, the Patent Office issued several office actions rejecting the claims as invalid, primarily in light of a prior art reference called Syvanne.   Ex. A at 76-79.   In response to the Final Rejection, the patent applicant argued that Syvanne did not disclose the usage of "external links" for scalability and amended the claims to include this limitation.   *Id.* at 40.   This is despite the fact that both the patent applicant and prosecution counsel knew of Passint's materiality by at least May 2007 and knew that the '775 examiner rejected the claims of the '775 Patent application based on Passint and its disclosure of "external links."   *Id.*   The '998 examiner relied on this distinction and expressly stated in the "Allowable Subject Matter" section of the Notice of Allowance that "[i]n particular, the usage of external links and scalable routers is novel and non-obvious."   *Id.* at 14.

20.     It is clear that the patent applicant, prosecution counsel, and/or others associated with the prosecution of the '998 Patent knew of the Passint reference for more than a year prior to the '998 Patent being granted and knew that Passint was material to the patentability of the '998 Patent during its prosecution.  These same individuals had a duty to disclose prior art that was material to the patentability of the claims being prosecuted in the '998 Application.  Despite this, these individuals failed to disclose the highly material Passint reference to the '998 patent examiner (i.e., Mr. Pollack) or the Patent Office.  As a result, the Patent Office was never provided, and Mr. Pollack was unable to consider, Passint's highly material disclosure of "external links" for scalability.

21.     Each of the following were material to the patentability of the '998 claims: (1) the intentional omission of Passint's usage of external links for scalability; (2) the intentional omission of the '775 claim amendments required to overcome Passint; and (3) the '998 Patent prosecution's affirmative statements about the patentability of "external links."  Had patent applicant or prosecution counsel disclosed Passint itself to the Patent Office *or* the fact that nearly identical claims of the '775 Patent required significant amendment prior to being allowed over Passint, they could not have made the representation of patentability due to the "external links" limitation to overcome the Patent Office's rejection.  The '998 Patent's claims would not and could not have issued in their present form but for the intentional omissions of Passint and/or affirmative misrepresentations that the usage of external links for scalability made the claims novel.

22.     Not only did the patent applicant, prosecution counsel, and/or others involved with the prosecution of the '998 patent deliberately withhold Passint and the '775 prosecution, they took advantage of the deception by making the misrepresentation that the '998 claims were patentable over the prior art because "each of the router cluster nodes have external links." (Ex.

A at 40).  Through these deliberate actions during the prosecution of the '998 Patent, the patent applicant, prosecuting counsel, and/or others involved with the prosecution of the '998 patent were able to obtain much broader claims in the '998 Patent than were obtained for its '775 Patent.   The single most reasonable inference that can be drawn from this evidence is that the patent applicant, prosecution counsel, and/or others involved with the prosecution of the '998 patent intended to deceive the Patent Office.

23.     The '998 Patent is invalid and unenforceable due to inequitable conduct.

### REQUEST FOR RELIEF

WHEREFORE, Juniper respectfully requests that the Court enter judgment in its favor and against Brazos as follows:

1)  Dismissing, with prejudice, Brazos's claims against Juniper;

2)  Denying all relief that Brazos seeks in its complaint and all amendments thereto;

3)  Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Juniper its costs and attorney fees; and

4)  Awarding any other relief the Court deems just and equitable.

## COUNTERCLAIMS

In accordance with Rule 13 of the Federal Rules of Civil Procedure, Counterclaim Plaintiff Juniper Networks, Inc. ("Juniper") hereby alleges and asserts the following Counterclaims against Counterclaim Defendant WSOU Investments, LLC d/b/a/ Brazos Licensing and Development ("Brazos").

## THE PARTIES

1.      Counterclaim Plaintiff Juniper is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1133 Innovation Way, Sunnyvale CA, 94089.

2.      On information and belief, Counterclaim Defendant Brazos is a limited liability company formed under the laws of the State of Delaware, with its purported principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

## JURISDICTION AND VENUE

3.      These Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*  This Court has subject matter jurisdiction over Juniper's Counterclaims under 28 U.S.C. §§ 1331 1338, 2201, and 2202.  An actual controversy exists under the Declaratory Judgment Act because Brazos alleges that Juniper has infringed and is infringing U.S. Patent No. 7,483,998 ("the '998 Patent"), and Juniper denies those allegations.

4.      This Court has personal jurisdiction over Brazos at least by virtue of Brazos's consent to the personal jurisdiction of this Court by the filing of the Complaint against Juniper in this Court.

5.      For purposes of Juniper's Counterclaims set forth herein, venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because: (1) this action was filed in this district

by Brazos and Brazos has thus submitted to personal jurisdiction in this Court and has consented to this venue; and (2) the present Counterclaims are in response to the allegations raised in Brazos's Complaint.

## COUNT 1: DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,483,998

6.      Juniper repeats and alleges its responses to the preceding paragraphs with the same force and effect as if fully restated herein.

7.      On September 4, 2020, Brazos filed a Complaint alleging patent infringement claims against Juniper.

8.      Brazos's Complaint alleges that Juniper infringes at least Claim 17 of the '998 Patent even though Juniper has not infringed, contributed to the infringement, or induced the infringement of Claim 17 or any other claim of the '998 Patent.

9.      An actual, continuing and justiciable controversy exists between Juniper and Brazos as to Juniper's non-infringement of all claims of the '998 Patent as evidenced by Brazos's Complaint and Juniper's Answer, as set forth above.  Absent a declaration of non-infringement, Brazos will continue to wrongfully assert the '998 Patent against Juniper, and will continue to cause Juniper injury and damage.

10.      Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Juniper requests a judicial determination and declaration that Juniper does not and has not infringed, contributed to the infringement of, or induced infringement of any claim of the '998 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

**COUNT 2: DECLARATION OF INVALIDITY OF U.S. PATENT NO. 7,483,998**

11.     Juniper repeats and alleges its responses to the preceding paragraphs with the same force and effect as if fully restated herein.

12.     Due to Brazos's filing of the Complaint, an actual controversy exists between Juniper and Brazos as to the validity of the '998 Patent.

13.     The claims of the '998 Patent are invalid, in whole or in part, for failure to meet one or more requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and/or 112.

14.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Juniper requests a judicial determination and declaration that the claims of the '998 Patent are invalid.

**COUNT 3: DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO.**
**7,483,998 DUE TO INEQUITABLE CONDUCT**

15.     Juniper repeats and alleges its responses to the preceding paragraphs with the same force and effect as if fully restated herein.

16.     The '998 Patent is directed to a "cluster router architecture and methods for performing distributed routing" in which the cluster router is made of "off-the shelf Personal Computer (PC) hardware-based router cluster nodes" that are "interconnected in an intra-connection network." Dkt. 1-01 at Abstract.  The '998 Specification concedes that it was known in the prior art to interconnect routers to work together in a cluster to address the scalability issues of dedicated hardware based routers.  *Id.* at 4:45-6:13.

17.     As explained in detail below, the '998 Patent is unenforceable as a result of inequitable conduct.  During the prosecution of the '998 Patent, the patent applicant argued that the claims were allowable over the prior art because they recited the use of "external links" for scalability.  This was the *only* limitation that the patent applicant identified to distinguish

independent claim 17 (currently asserted) from the prior art cited by the patent examiner. However, the patent applicant, prosecuting counsel, and/or others involved with the prosecution of the '998 patent knew of at least one prior art reference—U.S. Patent 6,101,181 ("Passint," Ex. C)—that expressly disclosed the use of "external links" for scalability.  *See* Ex. A.  Passint issued on August 8, 2000 and is prior art to the '998 Patent under 35 U.S.C. §102(b).  Moreover, the patent applicant, prosecuting counsel, and/or others knew Passint to be highly material to the patentability of the '998 claims, yet intentionally withheld the reference from the U.S. Patent and Trademark Office ("Patent Office").  This allowed the individuals pursuing the prosecution of the '998 Patent to present the misleading and deceptive argument that usage of "external links" for scalability made the '998 Patent claims patentable.

**The '998 Patent And The Closely Related '775 Patent**

18.     U.S. Patent No. 7,436,775 ("'775 Patent) is closely related to the '998 patent and was filed with claims that were *nearly identical* to the claims of the '998 patent.  *See* Ex. B.  For example, original claim 12 of the '775 Patent and issued claim 17 of the '998 Patent (currently asserted) are nearly identical as shown below:

| '775 Patent | '998 Patent |
| --- | --- |
| 12. A <u>router cluster node of a plurality of router cluster nodes interconnected in a cluster router, the router cluster node comprising:</u> | 17. A <u>router cluster node of a plurality of router cluster nodes interconnected in a cluster router, each router cluster node comprising:</u> |
| a. a plurality of cluster router internal interconnecting links connected thereto, the internal interconnecting links enabling the exchange of packets with adjacent router cluster nodes in the cluster router; | a. a plurality of cluster router internal interconnecting links connected thereto, the internal interconnecting links enabling the exchange of packets with adjacent cluster nodes in the cluster router; |
| b. at least one cluster router external link connected thereto, the at least one external link enabling exchange of packets between external communications network nodes and the cluster router; and | b. at least one cluster router external link connected to each of the cluster router nodes interconnected in the cluster router, the at least one external link enabling exchange of packets between communications network nodes external to said cluster router and the cluster router; |

| c.  a  router-cluster-node-centric  configuration  to effect distributed routing of the conveyed packets, the equivalency between router cluster nodes in the cluster router providing <u>a scalable router.</u> | c.  a  router-cluster-node-centric  configuration  to effect distributed routing of the conveyed packets, and  wherein  the  inclusion  of  said  at  least  one external link in each of the router cluster nodes in the cluster router provides <u>a scalable router.</u> |
|---|---|

19.    The '775 Patent application was filed on July 24, 2003 (four months before the '998 Patent application was filed).  The '775 Patent names two inventors: John Lawrence Jordan and Peter Rabinovitch.  Peter Rabinovitch is the sole named inventor of the '998 Patent.  On behalf of the patent owner, both applications were signed by in-house counsel John Granchelli.  The '775 and '998 Patent applications were both prosecuted by the same counsel, Mr. Jim Zegeer and Bacon & Thomas, PLLC, but were assigned to different patent examiners.  Mark A Mais was the examiner for the '775 Patent, and Melvin Pollack was the examiner for the '998 Patent.  *See* Ex. A at 74; Ex. B at 74 As attorneys prosecuting both applications, both Mr. Zegeer and Mr. Granchelli knew that the '775 Patent and '998 Patent were closely related and included nearly identical claims.  Prosecution counsel also knew that both patent applications were assigned to and being examined by different examiners at the Patent Office.  *See generally* Ex. A, Ex. B.  The two patents do not state they are related to one another, nor were any '775 Patent prosecution events disclosed to the Patent Office during the '998 prosecution.

**<u>The Examiner's Rejections Of The '775 Patent's Claims In View Of The Passint Reference</u>**

20.    During prosecution of the '775 Patent, the examiner rejected numerous claims based on Passint, including claim 12 listed above, which is nearly identical to issued claim 17 of the '998 Patent.  *See* Ex. B at 77-82.

21.    On May 9, 2007, the examiner rejected claims 1-23 of the '775 application under 35 U.S.C. §102(b) as being anticipated by Passint.  *Id*. at 76.  In doing so, the examiner found that the "external link" claim limitation was disclosed by Passint.  Specifically, the examiner found

that "Passint et al. discloses . . .(b) at least one cluster router external link connected thereto, the at least one external link enabling exchange of packets between external communications network nodes and the cluster router [each router has numerous input/output ports for receiving/sending messages, col. 3, lines 50-54]." *See* Ex. B at 77-78.

22.     Passint generally describes "a method and a multiprocessor computer system including a plurality of processing element nodes." Ex. C. at 3:45-47 (Passint).  Passint explains that the "nodes are interconnected by a scalable interconnect network 28, which permits multiprocessor computer systems 20 to be scale from desk side systems to very large supercomputer configurations." *Id.* at 5:54-58.  Within the interconnect network, "[r]outers route messages between the plurality of processing element nodes on the physical communication links." *Id.* at Abstract.  In Passint, "[e]ach router includes input ports for receiving messages, output ports [i.e., "external links" (annotated in red in the figure below)] for sending messages from the router, two types of virtual channels, a lookup table associated with the input port having a lookup table virtual channel number, and a virtual channel assignment mechanism." *Id.* at 3:52-57.  Passint describes an example of these interconnected nodes where each of the nodes includes "two processor ports from each router, such as those labelled PP" which "couple each router to two nodes to create a double bristled topology [i.e., scalability]." *Id.* at 7:36-49.



## FIG. 4

23.     In response to the examiner's May 9, 2007 rejection of the '775 claims based on Passint, the applicants cancelled pending claims 1-23 and amended the application to add claims with substantially narrower limitations.  *See* Ex. B at 63-67.  Despite these newly added narrower claims, the examiner again rejected the claims as being anticipated by Passint.  *Id.* at 41 (November 29, 2008 Final Rejection).   Once again, the examiner expressly found that Passint discloses "external links," stating:  "Passint et al. discloses. . . a plurality of external links for enabling said cluster-based router to exchange traffic with  a plurality of nodes of said packet-switched communication network [each router has numerous input/output ports for receiving/sending messages, col. 3, lines 50-54]."  *Id.* at 41-42.

24.     In response to this Final Rejection of the '775 claims based on Passint, the applicant's April 29, 2008 arguments included an annotated version of Figure 5 from Passint.  *Id.* at 36.  These annotations, which are highlighted in yellow below, expressly demonstrate that the applicant agreed that Passint shows "external links" and in fact labeled the figure with the term "external connections":



FIG. 5

25.     In the same response, the patent applicant amended the '775 independent claims to recite "said configuration having n dimensions, said cluster nodes being interconnected by said internal links in such a way that each of said cluster nodes is connected to two other cluster nodes in each of said dimensions, each of said cluster nodes thereby being connected to 2*n said internal links."  *Id*. at 30-33.  In view of these narrowing amendments, the examiner issued a notice of allowance finding that the amended, substantially narrower claims of the '775 Patent were allowable.  *Id*. at 13.

26.     Despite the clear overlap in subject matter between the '775 Patent and the '998 Patent and the presentation of nearly identical claims to the Patent Office during prosecution, neither patent applicant, prosecution counsel, nor any other party owing a duty of candor to the Patent Office ever cited Passint or disclosed the '775 Patent prosecution events to the Patent Office.

**Individuals Prosecuting The '998 Application Did Not Disclose Passint Or The Fact That They Amended The Nearly-Identical '775 Claims In View Of Passint**

27.     In 2008, during the prosecution of the '998 Patent, the Patent Office issued several office actions rejecting the claims as invalid, primarily in light of a prior art reference called Syvanne. *E.g.*, Ex. A at 76-79.  In response to the Final Rejection, the patent applicant argued that Syvanne did not disclose the usage of "external links" for scalability and amended the claims to include this limitation.  *Id.* at 40.  This is despite the fact that both the patent applicant and prosecution counsel knew of Passint's materiality by at least May 2007 and knew that the '775 examiner rejected the claims of the '775 Patent application based on Passint and its disclosure of "external links."  *Id.*  The '998 examiner relied on this distinction and expressly stated in the "Allowable Subject Matter" section of the Notice of Allowance that "[i]n particular, the usage of external links and scalable routers is novel and non-obvious."  *Id.* at 14.

28.     It is clear that the patent applicant, prosecution counsel, and/or others associated with the prosecution of the '998 Patent knew of the Passint reference for more than a year prior to the '998 Patent being granted and knew that Passint was material to the patentability of the '998 Patent during its prosecution.  These same individuals had a duty to disclose prior art that was material to the patentability of the claims being prosecuted in the '998 Application.  Despite this, these individuals failed to disclose the highly material Passint reference to the '998 patent examiner (i.e., Mr. Pollack) or the Patent Office.  As a result, the Patent Office was never provided, and Mr. Pollack was unable to consider, Passint's highly material disclosure of "external links" for scalability.

29.     Each of the following were material to the patentability of the '998 claims:  (1) the intentional omission of Passint's usage of external links for scalability; (2) the intentional omission of the '775 claim amendments required to overcome Passint; and (3) the '998 Patent prosecution's

affirmative statements about the patentability of "external links."  Had patent applicant or prosecution counsel disclosed Passint itself to the Patent Office *or* the fact that nearly identical claims of the '775 Patent required significant amendment prior to being allowed over Passint, they could not have made the representation of patentability due to the "external links" limitation to overcome the Patent Office's rejection.  The '998 Patent's claims would not and could not have issued in their present form but for the intentional omissions of Passint and/or affirmative misrepresentations that the usage of external links for scalability made the claims novel.

30.      Not only did the patent applicant, prosecution counsel, and/or others involved with the prosecution of the '998 patent deliberately withhold Passint and the '775 prosecution, they took advantage of the deception by making the misrepresentation that the '998 claims were patentable over the prior art because "each of the router cluster nodes have external links."  (Ex. A at 40).  Through these deliberate actions during the prosecution of the '998 Patent, the patent applicant, prosecuting counsel, and/or others involved with the prosecution of the '998 patent were able to obtain much broader claims in the '998 Patent than were obtained for its '775 Patent.   The single most reasonable inference that can be drawn from this evidence is that the patent applicant, prosecution counsel, and/or others involved with the prosecution of the '998 patent intended to deceive the Patent Office.

31.      For the foregoing reasons, the '998 Patent is invalid and unenforceable due to inequitable conduct.

32.      Juniper is informed and believes, and on that basis alleges, that Brazos contends that the '998 Patent is valid and enforceable.

33.      Accordingly, a valid and justiciable controversy has arisen and exists between Brazos and Juniper.  Juniper desires a judicial determination and declaration of the respective

rights and duties of the parties herein. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties.

34. Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Juniper requests a judicial determination and declaration that the claims of the '998 Patent are invalid and not enforceable.

## REQUEST FOR RELIEF

WHEREFORE, Juniper respectfully requests that the Court enter judgment in its favor and against Brazos as follows:

A. Dismissing, with prejudice, Brazos's Complaint against Juniper;

B. Denying all relief that Brazos seeks in its Complaint and any amendments thereto;

C. Entering judgment in favor of Juniper and against Brazos on Juniper's Counterclaims;

D. Entering a declaratory judgement that Juniper does not and has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '998 Patent;

E. Entering a declaratory judgment that the claims of the '998 Patent are invalid;

F. Entering a declaratory judgment that the claims of the '998 Patent are unenforceable due to inequitable conduct before the United States Patent and Trademark Office;

G. Finding this case to be exceptional under 35 U.S.C. § 285 and awarding Juniper its costs and attorney fees; and

H. Awarding any other relief the Court deems just and equitable.

DATED:  March 16, 2021                    Respectfully submitted,


By _____ /s/ B. Russell Horton _____
    B. Russell Horton
    rhorton@gbkh.com
    George Brothers Kincaid & Horton LLP
    114 West 7th Street, Suite 1100
    Austin, TX 78701
    Telephone: (512) 495-1400
    Facsimile: (512-499-0094

    Kevin P.B. Johnson
    kevinjohnson@quinnemanuel.com
    Todd Briggs
    toddbriggs@quinnemanuel.com
    Margaret Shyr (admitted *pro hac vice*)
    margaretshyr@quinnemanuel.com
    Joseph E. Reed (admitted *pro hac vice*)
    joereed@quinnemanuel.com
    Quinn Emanuel Urquhart & Sullivan, LLP
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    Telephone: (650) 801-5000
    Facsimile: (650) 801-5100

    Nima Hefazi (admitted *pro hac vice*)
    nimahefazi@quinnemanuel.com
    Quinn Emanuel Urquhart & Sullivan, LLP
    865 South Figueroa Street, 10th Floor
    Los Angeles, CA 90017
    Telephone: (213) 443-3000
    Facsimile: (213) 443-3100

    *Counsel for Defendant*
    *Juniper Networks, Inc.*